IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAUDEL REYNOSO-RODRIGUEZ,

    Petitioner,                  No. CIV S-08-321 MCE KJM

  vs.

JANET NAPOLITANO, et al.,

    Respondents.             FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is in the custody of the Secretary of the Department of Homeland Security and the Attorney General of the United States and their employees and agents. He has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner claims that he is being unlawfully detained as a result of U.S. Immigration and Customs Enforcement's (ICE) misapplication of the provisions of 8 U.S.C. §§ 1226 and 1231. Respondents' motion to dismiss is before the court.

I.    Background

        Petitioner is a legal resident alien. He has been in the custody of respondents since June 2, 2006. In February 2007, the federal government obtained a final order of removal against him. See Pet. at 3. He has appealed that order, and the Ninth Circuit has issued a stay of his removal while his appeal of the final removal order is pending. Id.

1

1       Petitioner filed his application for a writ of habeas corpus in February 2008,
2  alleging his continued detention is unlawful under 8 U.S.C. §§ 1226 and 1231 and demanding
3  that he be given a conditional release on bond until the Ninth Circuit decides his appeal, or in the
4  alternative, that the court order a hearing before an Immigration Judge (IJ) to evaluate
5  petitioner's eligibility for supervision under appropriate conditions. See Pet. at 9.  Petitioner
6  does not seek any relief that would affect the final order of removal that is now before the Ninth
7  Circuit.  If he did, this court would not have jurisdiction to rule on his petition.  8 U.S.C.
8  § 1252(b)(9).  However, this court does have jurisdiction to hear legal challenges that are
9  collateral to a final order of removal, such as those levied by an alien against the Attorney
10 General's detention authority through a petition for writ of habeas corpus.  See Nadarajah v.
11 Gonzalez, 443 F.3d 1069, 1075 (9th Cir. 2006).  The court therefore has jurisdiction to rule on
12 the instant petition.
13      On July 25, 2008, approximately five months after this petition was filed, the
14 Ninth Circuit handed down its opinion in Casas-Castrillon v. Dep't. of Homeland Security, 535
15 F.3d 942 (9th Cir. 2008).  Casas-Castrillon concerned a § 2241 petition similar to this one.  The
16 petitioner there was an alien with a final order of removal pending on appeal before the Ninth
17 Circuit.  As is the case here, the petition in Casas-Castrillon did not challenge the order of
18 removal; rather, it sought a hearing to contest the necessity of the alien's continued detention
19 while he awaited the outcome of his appeal of the order of removal.  The Ninth Circuit found
20 that once an alien's removal proceedings before the Board of Immigration Appeals (BIA) were
21 complete, the Attorney General's authority to hold the alien is no longer mandatory under 8
22 U.S.C. § 1226(c).  Instead, detention is discretionary under 8 U.S.C. § 1226(a).  See Casas-
23 Castrillon, 535 F.3d at 948.  The court held that under § 1226(a), "prolonged detention of aliens
24 is permissible only where the Attorney General finds such detention individually necessary by
25 providing the alien with an adequate opportunity to contest the necessity of his detention." Id. at
26 951.  An individual hearing on the alien's dangerousness or flight risk is therefore required to

justify continued custody. "[A]n alien is entitled to release on bond unless the 'government establishes that he is a flight risk or will be a danger to the community.'" Id.

Petitioner in this case received a hearing before an IJ, as provided by Casas-Castrillon, on November 19, 2008, some nine months after he filed this petition. See Mot. at 1. The IJ denied bond, finding petitioner to be a danger to the community. Id. Respondents then moved to dismiss the petition, arguing that the hearing before the IJ – a remedy the petition demands as an alternative form of relief – renders the entire petition moot. Id. Petitioner responded that his petition should not be dismissed because the hearing before the IJ did not meet the requirements of due process. He gave three bases for his due process argument: (1) the IJ improperly shifted the burden of proof from the government to petitioner; (2) the government should have been held to a "clear and convincing" standard of proof; and (3) the IJ did not make an adequate record of the bond hearing. See Opp'n at 10.

When the court heard the motion to dismiss on February 25, 2009, petitioner's appeal of the IJ's decision was pending before the BIA. The government argued that, due to the pending appeal, petitioner had not administratively exhausted the due process challenges to the IJ hearing and that therefore habeas review under § 2241 was not yet appropriate. See Reply at 1. After considering the question, the court stayed this case until the petitioner's appeal before the BIA was complete. See Stay Order (docket no. 23). On June 8, 2009, the BIA rendered its decision, finding that the IJ "erred in placing the burden of proof on [petitioner] to demonstrate that he does not pose a danger to the community or a risk of flight." BIA Decision at 2.[1] However, the BIA agreed with the IJ that petitioner presents a danger to the community and upheld the denial of bond on that basis.

/////

---

[1] In compliance with the court's stay order, petitioner timely noticed the court of the BIA's decision. See Notice (docket no. 28). Petitioner attached a copy of the decision to the notice as Exhibit A.

II.   Analysis

In supplemental briefing ordered by the court, the government now concedes that "[petitioner] has exhausted administrative remedies and the petition challenging the adequacy of the administrative process is properly before this Court." Resp'ts' Supp. Brief at 2. The government still argues the petition should be dismissed because (1) the bond hearing satisfied the requirements of due process, (2) any due process error at the hearing was harmless, and (3) the court does not have jurisdiction to review the factual bases or discretionary aspects of the IJ's and BIA's rulings. Petitioner reasserts his position that the IJ violated his right to due process by (1) shifting the burden of showing he is not a danger to the community onto him, (2) applying the wrong standard of proof, and (3) failing to make an adequate record of the hearing.

With the exception of a few case cites, the government no longer frames its argument as one of mootness. In addressing petitioner's due process challenges, however, the thrust of the government's argument for dismissal is the same. As the court stated in staying this case, "the mere occurrence of the hearing before the IJ in November 2008 does not moot this petition. A bond hearing... must also have some requirements of due process; this petition is moot only if the IJ's hearing met them." Stay Order at 6. Therefore the question of whether the court should grant the petition based on a due process violation in the bond hearing, or find no such violation and dismiss the petition as moot, is now squarely before the court.

A.   The Zadvydas Due Process Lineage

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). The fact that an alien has a removal order pending against him does not strip him of his constitutionally protected interest in liberty. See id. at 693-94, 696. Zadvydas concerned a different factual scenario than here – namely, the potentially permanent detention of an alien the government was unable to remove – but the Ninth

4

Circuit has "applied the Zadvydas framework to determine when prolonged discretionary detention[2] is authorized...." Rodriguez v. Hayes, ___ F.3d ___, 2009 WL 2526622 at *4 (9th Cir. 2009). Addressing the petition of an alien who had been detained for over two years and eight months, the Ninth Circuit has invoked Zadvydas for the proposition that "it is constitutionally doubtful that Congress may authorize imprisonment of this duration for lawfully admitted resident aliens who are subject to removal." Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir. 2005).[3] In Prieto-Romero v. Clark, 534 F.3d 1053 (9th Cir. 2008), the Ninth Circuit relied on Zadvydas in stating that even when detention is authorized by statute, as it is in this case, "due process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interests in avoiding physical restraint.'" Prieto-Romero, 534 F.3d at 1065 (quoting Zadvydas, 533 U.S. at 690-91). Casas-Castrillon quoted the same passage from Zadvydas. Casas-Castrillon, 535 F.3d at 950.

  Casas-Castrillon thus falls in the Zadvydas line of cases reaffirming that fundamental due process protections must attend the prolonged detention of aliens with removal orders pending against them. None of those cases has spelled out the specific contours of those due process requirements. Casas-Castrillon says only that the detainee is entitled to "an adequate opportunity to contest the necessity of his detention," id. at 951, and incorporates Tijani's statement that an IJ should grant bail "unless the government establishes that he is a flight risk or will be a danger to the community." Id. at 952. The word "establishes" suggests that the government has some burden to carry; Casas-Castrillon does not clarify whether it is a

---

[2] Discretionary detention under § 1226(a) often lapses past the six months that Zadvydas defined as the limit on a "presumptively reasonable period of detention." Zadvydas, 533 U.S. at 701. By the time this petition was filed, petitioner had been detained approximately twenty months. That period has now reached past three years.

[3] The petition in this case relies heavily on Tijani, 430 F.3d 1241 (9th Cir. 2005), which became the touchstone for the Ninth Circuit's opinion in Casas-Castrillon.

5

burden of proof, production or persuasion, or some combination thereof, or what quantum of proof the government must meet.

The concluding paragraph of Casas-Castrillon states that the habeas relief sought by that petitioner would be granted because it was unclear "whether the government has afforded him a bond hearing that complies with the requirements of Tijani." Casas-Castrillon, 535 F.3d at 952. Tijani itself is short on specifics: the majority opinion is three paragraphs long, and the mandate to the government is simply to "establish" a reason for ongoing detention.[4]

B. Burden of Proof and Harmless Error

Still, the court is not wholly without guidance on the two most fundamental due process arguments before it – i.e., who has the burden of proof in a Casas-Castrillon hearing and what standard of proof that party must meet. As to the burden of proof, the government now "concedes that in Casas, the Ninth Circuit explicitly held that the burden of proof in these bond hearings falls to the government" to prove a removable alien is not a danger to the community or a risk of flight. Supp. Reply at 3. The government does not concede the whole point, however, arguing that the BIA "articulated the correct burden of proof," applied the burden properly in its review and thus rendered the IJ's error harmless.[5] Id.

The court agrees with the parties and the BIA that the Ninth Circuit's statement that bail is appropriate "unless the government establishes that he is a flight risk or will be a danger to the community," Casas-Castrillon, 535 F.3d at 952, places the burden of proof on the

---

[4] The concurring opinion laments this lack of guidance, noting that the majority "barely alludes to the standards that should govern the conduct of such a hearing, or what facts must be established in order to warrant the grant or denial of release, or who has the burden of proving those facts, and by what standard of proof." Tijani, 430 F.3d at 1243. The type of standards the concurrence references, if articulated, would assist this court in deciding whether the petitioner was afforded the minimum requirements of due process in the relatively new setting of a Casas-Castrillon hearing.

[5] The BIA reviews an IJ's findings of fact under the "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). It reviews de novo questions of law, such as where to place the burden of proof. 8 C.F.R. § 1003.1(d)(3)(ii).

6

government.  See also Gemma Ramirez v. Kane, 2008 WL 4174876 at *4 (D.Ariz.) (ruling that the government's insistence that the petitioner should bear the burden of proof "runs counter to the Ninth Circuit's holding in Casas-Castrillon").  However, there is conflicting authority on whether, or in what circumstances, the BIA as an administrative appellate body can correct a misplaced burden of proof and render the resulting due process violation merely harmless. Compare Brezilien v. Holder, 569 F.3d 403, 411 (9th Cir. 2009) ("[w]here the BIA conducts a de novo review, 'any error committed by the IJ will be rendered harmless by the Board's application of the correct legal standard'" (citation omitted)) with Zadvydas, 533 U.S. at 692 ("the Constitution may well preclude granting 'an administrative body the unreviewable authority to make determinations implicating fundamental rights.'" (citations omitted)).  See also Santosky v. Kramer, 455 U.S. 745, 757 n.9 (1982) (citing to Woodby v. I.N.S., 385 U.S. 276, 282 (1966), in observing, "[n]or has the Court treated appellate review as a curative for an inadequate burden of proof").

None of the authorities cited by the government addresses due process errors as substantial as a misplaced burden of proof in a case where bond was denied a detainee.  On the other hand, it is not clear that imposing the burden of proof on a detainee in a Casas-Castrillon hearing is injurious per se.  Because there is scant record of the proceedings before the IJ in this case, it is difficult to say how the hearing would have been different had the IJ followed Casas-Castrillon properly.  In sum, the prejudice of the IJ's underlying error in applying the burden of proof is unclear here.

    C.    Standard of Proof

The court need not determine the effect of the BIA's correction of the IJ's error, however, because the BIA failed to articulate the appropriate standard of proof; this failure in itself warrants a conditional grant of the writ and a new hearing before an immigration judge.

To the extent the BIA's error grew from the procedural uncertainties surrounding Casas-Castrillon hearings, the omission is understandable: petitioner's case presented the IJ and

7

the BIA with a new, judicially created immigration detention proceeding whose procedural requirements, including the standard of proof, have yet to be defined. The Ninth Circuit has implicitly recognized that its delineation of the procedural safeguards required in these proceedings is unfinished, recently commenting that "we have ... <u>begun</u> to determine what sort of bond hearing, if any, is needed to justify prolonged discretionary detention for individual petitioners." <u>Rodriguez</u>, 2009 WL 252 6622 at *4 (emphasis added).

Nevertheless, the Supreme Court has spoken to the serious constitutional deficiency that a belatedly defined standard of proof presents:

> [T]his Court never has approved case-by-case determination of the proper <u>standard</u> <u>of</u> <u>proof</u> for a given proceeding. Standards of proof, like other "procedural due process rules, are shaped by the risk of error inherent in the truth-finding process as applied to the <u>generality</u> <u>of</u> <u>cases</u>, not the rare exceptions." Since the litigants and the fact-finder must know at the outset of a given proceeding how the risk of error will be allocated, the standard of proof necessarily must be calibrated in advance. Retrospective case-by-case review cannot preserve fundamental fairness when a class of proceedings is governed by a constitutionally defective evidentiary standard.

<u>Santosky</u>, 455 U.S. at 757 (emphases in original; quoting <u>Mathews v. Eldridge</u>, 424 U.S. 319, 344 (1976)).[6] Although the petitioner in this case argues for relief because the IJ and BIA failed to apply a particular standard of proof ("clear and convincing"), the court concludes that the centrality of a pre-defined standard of proof to the "fundamental fairness" of a proceeding, as explained in <u>Santosky</u>, mandates relief from the BIA's decision for its failure to apply any

---

[6] In <u>Santosky</u>, the Court addressed the process that was due in a proceeding where the State sought permanent termination of parental rights. The court recognizes that the individual and public interests at stake in <u>Santosky</u> were therefore different from those present here. That does not mean that <u>Santosky</u> is inapposite, however. To the contrary, <u>Santosky</u>'s extensive reliance on <u>Addington v. Texas</u>, 441 U.S. 418 (1979), discussed below, bolsters its applicability as a statement of general principles guiding the court in articulating the proper standard of proof. <u>Addington</u> is closely analogous to this case in that it concerns an individual's right to be free from unwarranted physical restraint. In <u>Santosky</u>, the Supreme Court also references a range of cases, including "cases involving individual rights, whether criminal or civil," and notes the fundamental fairness considerations implicated by "a variety of government-initiated proceedings that threaten the individual involved with 'a significant deprivation of liberty' . . ."). <u>Santosky</u>, 455 U.S. at 756.

standard of proof. And since "the standard of proof must be calibrated in advance," id. at 757, only a new hearing can remedy that error.

"Calibrat[ing] in advance" also suggests this court should decide now what standard of proof the IJ should apply on rehearing. Id. Petitioner argues that the government must prove current dangerousness or risk of flight by clear and convincing evidence. For its part, the government does not so much suggest a lower standard of proof – i.e., a preponderance of the evidence – as it argues that the lack of any standard of proof specified by statute or regulation leaves the issue to the broad discretion of the Immigration Judge.[7] See Supp. Reply at 3.

The government's position that the Immigration Judge can decide the correct standard of proof is constitutionally untenable, in light of Supreme Court precedent indicating the standard of proof must pre-exist the immigration judge's determination of the facts:

> The function of the standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

Addington v. Texas, 441 U.S. 418, 423 (1979) (quoting In re Winship, 397 U.S. 358, 370 (1970). In other words, the factfinder in a proceeding can no more determine the standard of proof to be applied than the litigants can prescribe it. Proceedings determining the status of resident aliens, where the factfinder is an Immigration Judge, are no exception. The Supreme Court has ruled

---

[7] Petitioner filed a notice of supplemental authority, submitting an unpublished order from the Southern District of California. See Docket no. 22 (submitting Abdallah v. Cherthoff, Case No. 3:06cv1541-DMS-NLS (S.D.Cal., March 2, 2009)). That order deals only with the placement of the burden of proof in a Casas-Castrillon hearing, which is not in dispute here. Footnote 4 of the order, however, states that "[r]espondents, assuming they carry the burden, concede that dangerousness must be proven by clear and convincing evidence...." Id. at 6 n.4. It appears, therefore, that at least one of the respondents now arguing against a "clear and convincing" standard has taken a contrary position with respect to dangerousness in another forum.

that in deportation proceedings, "the question of what degree of proof is required... is the kind of question which has traditionally been left to the judiciary to resolve, and its resolution is necessary in the interest of the evenhanded administration of the Immigration and Nationality Act." Woodby, 385 U.S. at 284.

As the court noted in its previous stay order, "Casas-Castrillon introduced a new species of immigration hearing, the post-final order of removal detention hearing, that does not have any clear taxonomy in the federal government's regulatory scheme." Stay Order at 7. Articulating the standard of proof appears to be the next, natural stage in the evolution of the discretionary detention hearing the Ninth Circuit has methodically introduced through several cases, beginning with Tijani. While this court does not undertake an articulation of the standard of proof lightly, it also cannot ignore the direction from the Supreme Court in Addington, In re Winship and Santosky, that "the standard of proof necessarily must be calibrated in advance." Santosky, 455 U.S. at 757.

In considering the appropriate standard of proof, the court takes account of Tijani's reliance on first principles of due process, as prescribed by the Supreme Court. In originally prescribing a hearing at which the government must "establish[] that [the alien] is a flight risk or a danger to the community," the one authority the Ninth Circuit cited was Cooper v. Oklahoma, 517 U.S. 348, 363 (1996). Tijani, 430 F.3d at 1242. The page of Cooper the Tijani court found relevant draws directly on Santosky and Addington:

> . . . we have held that due process places a heightened burden of proof on the State in civil proceedings in which the "individual interests at stake ... are both 'particularly important' and 'more substantial than mere loss of money.'"

Cooper, 517 U.S. at 363 (quoting, inter alia, Santosky and Addington). The possibility of long-term detention unquestionably implicates a "particularly important" individual interest that is "more substantial than mere loss of money."

/////

Having established this foundation, the court notes that cases addressing civil or quasi-criminal detention or commitment proceedings support adoption of the "clear and convincing" standard.  In Foucha v. Louisiana, 504 U.S. 71 (1992), the Supreme Court held that "the State must establish insanity and dangerousness by clear and convincing evidence in order to confine an insane convict beyond his criminal sentence, when the basis for his original confinement no longer exists."  Foucha, 504 U.S. at 84.  Here too, the government seeks to detain petitioner well beyond his criminal sentence.  The Court in Addington, which addressed the civil commitment of a mentally ill person, stated that "this Court has used the 'clear, unequivocal and convincing" standard of proof to protect particularly important individual interests in various civil cases."  Addington, 441 U.S. at 424.  Addington cited three immigration cases in support of the general applicability of the "clear and convincing" standard to cases where the liberty interest was freedom from physical restraint.  See id. (citing Woodby, 385 U.S. at 285, Chaunt v. U.S., 364 U.S. 350, 353 (1960), and Schneiderman v. U.S., 320 U.S. 118, 125 (1943)).  In Zadvydas, the seminal case in Casas-Castrillon's genealogy, the Court states that only "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'"  Zadvydas, 533 U.S. at 690 (citing Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).  According to the Supreme Court, requiring a "special justification" means "we have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections."  Id. at 690-91.  The Ninth Circuit recently has found that discretionary detention under § 1226(a), the category of detention at issue in this case, presents "the same constitutional concerns present in Zadvydas."  Rodriguez at *3.[8]

/////

---

[8] See also Lawson v. Gerlinski, 332 F.Supp.2d 735, 745 (M.D.Pa. 2004) (citing Zadvydas for the proposition that "a stay of removal does not undermine the due process bedrock principle that there must be a 'special justification' outweighing the alien's constitutionally-protected interest in liberty....").

11

In light of these authorities, the court finds that the "clear and convincing" standard is well tailored to the constitutional concerns present in this case. This standard "strikes a fair balance between the rights of the individual and the legitimate concerns of the [government]," Addington, 441 U.S. at 431, by helping to ensure that "specially dangerous individuals" stay in jail while affording "strong procedural protections" against unwarranted detentions. Zadvydas, 533 U.S. at 690-91.

Petitioner also argues that part of the government's burden should be to prove that petitioner presents a current danger to the community. Opp'n at 12-14; Supp. Opp'n at 3-4. Respondents do not address this argument.[9] The court agrees that the basis for ongoing detention must be current dangerousness, and that danger must be shown by clear and convincing evidence. While there appears to be no Ninth Circuit case addressing the issue, the court finds persuasive the reasoning and ruling in Ngo v. I.N.S., 192 F.3d 390 (3rd Cir. 1999). In Ngo, the Third Circuit observes that "[w]hen detention is prolonged, special care must be exercised so that the confinement does not continue beyond the time when the original justifications for custody are no longer tenable." Id. at 398. This principle is consonant with the direction in Zadvydas, that "preventive detention based on dangerousness [is] limited to specially dangerous individuals and subject to strong procedural protections." Zadvydas, 533 U.S. at 690-91.[10] Indeed, "due process is not satisfied... by rubberstamp denials based on temporally distant offenses. The process due . . . requires an opportunity for an evaluation of the individual's current threat to the community and his risk of flight." Ngo, 192 F.3d at 398.

---

[9] It does not appear that respondents have ever claimed that petitioner presents a risk of flight, nor do they argue that justification for detention to this court. Therefore the court does not reach the question of what standard of proof should apply when the government seeks to detain an alien on flight risk considerations.

[10] See also Mau v. Chertoff, 562 F.Supp.2d 107, 1118 (S.D.Cal. 2008) (relying on Zadvydas' statement that "[i]n cases in which preventive detention is of potentially indefinite duration, we have also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps to create the danger").

III.     Conclusion

Based on the foregoing discussion, the undersigned will recommend that the court order a conditional grant of the petition and order that petitioner receive a new hearing before an IJ no later than thirty days after the entry of the order conditionally granting the petition. The court should also instruct the IJ to require the government to show by clear and convincing evidence that the petitioner presents a current danger to the community. Given that the IJ's and BIA's failure to articulate any standard of proof comprises a due process violation and warrants a new hearing, the court need not reach petitioner's third argument, that the lack of a record from the initial hearing also constitutes a due process violation per se.[11] However, this court will retain jurisdiction to assess the IJ's compliance with any order it ultimately makes. See Harvest v. Castro, 531 F.3d 737 (9th Cir. 2008). The court's ability to address subsequent arguments from the parties, if any, will be significantly limited if the IJ fails to generate a reviewable record at the rehearing. Therefore, in the interest of judicial efficiency and as an aid to the court's supervision of a conditional grant of the petition, should any supervision become necessary, the undersigned will recommend that the hearing before the IJ be recorded in a manner such that it can be transcribed and reviewed.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.     The motion to dismiss (docket no. 15) be denied;

2.     The court conditionally grant the petition for writ of habeas corpus and order that petitioner be released from respondents' custody unless he receives a hearing before an Immigration Judge within thirty days of the entry of any order conditionally granting the petition;

/////

---

[11] The court also need not address the extent to which the IJ's discretionary findings lie outside the scope of the court's jurisdiction. Respondents' Supp. Brief at 4. As respondents correctly suggest, the court's analysis can "end at the inquiry of whether [petitioner] received a full and fair hearing in accordance with... due process." Id.

13

3.  The hearing before the Immigration Judge comply with all the foregoing determinations concerning the burden of proof and standard of proof; and

4.  The hearing before the Immigration Judge be recorded so that it can be transcribed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 28, 2009.

_____
U.S. MAGISTRATE JUDGE

4 reyn0321.dismiss

14